IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CONTINENTAL HOLDINGS, INC., successor to CONTINENTAL CAN COMPANY, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | 8:09CV362 |
| v. | ) ) | |
| CROWN HOLDINGS INCORPORATED, CROWN CORK & SEAL COMPANY, INC., and CROWN BEVERAGE PACKAGING, INC., | ) ) ) ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) | |

      This matter is before the Court on the motion for summary judgment filed by defendants Crown Holdings Incorporated, Crown Cork & Seal Company, Inc., and Crown Beverage Packaging, Inc. (collectively hereinafter "Crown") (Filing No. 38), index of evidence (Filing No. 39) and brief in support of said motion (Filing No. 40). Plaintiff filed a brief in opposition (Filing No. 41, together with the index of evidence (Filing No. 42); and plaintiff filed a reply brief (Filing No. 46) and a reply index of evidence (Filing No. 47). The Court has reviewed the motion, briefs, and the applicable law and makes the following findings.

### I. BACKGROUND

      In its amended complaint, plaintiff Continental Holdings, Inc., ("Continental") seeks a declaration regarding its obligation, under the terms of a Stock Purchase Agreement (the "SPA") between the parties, to defend and indemnify Crown against

certain third party claims (Filing No. 8).  Specifically, Continental seeks from this Court a judgment declaring the rights, duties, and legal obligations of Continental and Crown with regard to Continental's obligations pursuant to the provisions of section 10 of the SPA (Filing No. 8).  It is clear from Continental's amended complaint, that the specific provision at issue is Section 10.3(a)(iv) of the SPA (Filing No. 8 at ¶ 5). Section 10.3(a)(iv) provides:

> 10.3 <u>Indemnification by Seller</u>
>
> (a) Seller agrees to indemnify Buyer . . . from all Liabilities arising out of **(iv) all Liabilities relating to past or existing businesses of the Companies and Subsidiaries other than the Business** . . ., including, without limitation, . . . all Liabilities with respect to any previous . . . sales or disposition of stock or assets of subsidiaries or assets of divisions or lines of business of the Companies or the Subsidiaries (or their predecessors) . . . .

(emphasis added).

A JAMS Arbitration is currently pending between Continental and Crown relating to the indemnification of environmental liabilities (Crown's Index of Ev. Ex. 1 at para. 9).  As part of the Arbitration, Continental filed a motion for partial summary judgment asking the Arbitrator, Retired United States District Court Judge John C. Lifland, to adopt Continental's interpretation of Section 10.3(a)(iv) of the SPA

(Crown's Index of Ev. Ex. 1 at para. 1).  Continental sought a ruling declaring that the meaning of Section 10.3(a)(iv) was such that Continental was not obligated to indemnify Crown for liabilities of previously sold food and beverage metal can manufacturing plants (Crown's Index of Ev. Ex. 1 at para. 11).  Crown asserted that from the language of Section 10.3(a)(iv), it was clear that Continental agreed to retain 100% of all liabilities related to all assets sold off prior to the SPA, including food and beverage can plants (Crown's Index of Ev. Ex. 1.D).  After briefing, evidence, and oral argument on Continental's motion for partial summary judgment, Judge Lifland ruled that Continental's position on the interpretation of Section 10.3(a)(iv) was incorrect, and that Crown's position was correct (Crown's Index of Ev. Ex. 1.B).  On October 17, 2010, Judge Lifland held:

> Accordingly, the Arbitrator concludes from the **intrinsic evidence** (the language of the SPA) that the correct reading of "other than the Business" as it appears in Section 10.3(a)(iv) is "other than [the food and beverage metal can business and the metal can and can end technology of the Companies and their subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA].
>
> The correct construction is therefore that "existing businesses" is modified by "other than the Business" and "past business" is not.  In other words,

> Liabilities related to existing businesses not being sold (i.e., businesses "other than the Business") were retained by Continental, a perfectly rational arrangement because it would make no sense for Crown to acquire responsibility for Liabilities when it did not acquire the business generating such Liabilities.
>
> The result is that, **as a matter of contract interpretation**, Crown's position is correct.

(Crown's Index of Ev. Ex. 1.B) (emphasis added).

Crown now moves for summary judgment as to the correct interpretation of Section 10.3(a)(iv) of the SPA in this matter. Specifically, Crown requests that this Court find that Continental is precluded from relitigating Judge Lifland's "correct" interpretation of Section 10.3(a)(iv) of the SPA and obtaining a new definition of "Business".

## II. LEGAL ANALYSIS

### A.   Summary Judgment

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party moving for summary judgment must always bear "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the party seeking summary judgment carries its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). Only disputes over material facts will preclude summary judgement. *See Id.* at 248. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

At summary judgment, the evidence is viewed in a light most favorable to the nonmoving party, with all inferences drawn in that party's favor. *See Matsushita Elec. Indus.*, 475 U.S. at 587. In making this review, the Court is particularly aware that it does not "weigh the evidence and determine the truth of the matter" but instead determines "whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**B.     Standard of Review**

In the Eighth Circuit, a federal court should look to the applicable state law to determine the issue preclusive effect of a prior judgment in a diversity action. *See Manion v. Nagin*, 394 F.3d 1062, 1066 (8th Cir, 2005). The parties agree that this action is governed by New York state law (Crown's Index of Ev. Ex. 1.A at Sect. 11.6). Under New York law, "if an issue between identical parties is resolved in an arbitration proceeding, the determination as to that issue may be binding on subsequent court proceedings under the doctrine of collateral estoppel where the parties have had a full and fair opportunity to litigate the issue." *In re Arb. Falzone & N.Y. Cent. Mut. Fire Ins. Co.*, 2010 WL 4116600 (N.Y. Oct. 21, 2010). To determine whether a party had a full and fair opportunity to litigate an issue in a prior proceeding, New York courts "must consider the realities of the [prior] litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination now asserted against him." Saca v. Canasa, 903 N.Y.S.2d 861, 866 (N.Y. Sup. Ct. 2010) (quotation omitted).

**C.     Discussion**

Crown claims that Continental is precluded from relitigating the interpretation of Section 10.3(a)(iv) of the SPA and obtaining a new definition of "Business" because the issue as

between the parties was decided in Judge Lifland's October 17, 2010 holding in the pending JAMS Arbitration.  Continental claims the determination as to the issue cannot be binding because Continental did not have a full and fair opportunity to litigate the issue.  Although the JAMS Arbitration does involve a separate and distinct case between the parties, relating to the issue of indemnity obligations for certain environmental liabilities, the issue that was before Judge Lifland in determining the correct interpretation of Section 10.3(a)(iv) of the SPA is the same issue that is now before this court.  As the issue was before Judge Lifland upon Continental's own motion, Continental fully briefed and orally argued the issue before Judge Lifland, and Judge Lifland correctly based his decision solely on the intrinsic evidence (the language of the SPA) pursuant to New York contract law, this Court finds that Continental had a full and fair opportunity to litigate the issue in the JAMS Arbitration.  Thus, Judge Lifland's interpretation of Section 10.3(a)(iv) of the SPA is binding on this Court, Continental is precluded from relitigating the issue, and Crown's motion for summary judgment

will be granted. A separate order will be entered in accordance with this memorandum opinion.

DATED this 13th day of January, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court