IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CONTINENTAL HOLDINGS, INC., successor to CONTINENTAL CAN COMPANY, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | 8:09CV362 |
| v. | ) ) | |
| CROWN HOLDINGS INCORPORATED, CROWN CORK & SEAL COMPANY, INC., and CROWN BEVERAGE PACKAGING, INC., | ) ) ) ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) | |

This matter is before the Court upon plaintiff's motion for reconsideration or, in the alternative, to alter or amend judgment (Filing No. 50). Plaintiff requests that the Court reconsider, or in the alternative, alter or amend its memorandum opinion dated January 13, 2011 (Filing No. 48) and corresponding judgment (Filing No. 49) granting defendants' motion for summary judgment (Filing No. 38). Upon review of the motion, briefs, and relevant law, the Court finds plaintiff's motion should be denied.

## I. STANDARD OF REVIEW

The Eighth Circuit has held that a motion for reconsideration "is typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment." *Auto Servs. Co., Inc. v. KPMG, KKP*, 537 F.3d 853, 855 (8th Cir. 2008). A Rule 59(e) motion is

properly granted, among other things, where it is necessary to "correct manifest errors of law or fact upon which the judgment is based" and/or "to protect manifest injustice." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE, § 2810.1, p. 124 (1995). Similarly, the Court may grant relief under Rule 60(b) due to, among other things, "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).

**II. DISCUSSION**

**A. Motion for reconsideration**

Plaintiff argues the Court should reconsider its finding that Retired United States District Court Judge John C. Lifland's interpretation of Section 10.3(a)(iv) of the 1990 Stock Purchase Agreement ("SPA") provided in his October 17, 2010, JAMS Arbitration order is binding on this Court. Plaintiff claims that in the order, Judge Lifland expressly recognized that both plaintiff's interpretation of Section 10.3(a)(iv) and defendants' interpretation of that section are "plausible." (Crown Exhibit 1.B., p. 2, Filing No. 39-9). In light of this language, plaintiff asserts that Judge Lifland explicitly found that the language of the SPA is ambiguous, and pursuant to New York law, that finding presents a question of fact that may not be resolved on summary judgment. *Cooling Towers Specialties Inc. v. Yaro Enters, Inc.*, 89 N.Y.S.2d 347, 348 (NY App. Div. 209). It is plaintiff's position that once Judge Lifland determined that the

-2-

contractual language was ambiguous, his order finding defendants' interpretation of Section 10.3(a)(iv) of the SPA as being correct is not allowed under the provisions of New York law.

Plaintiff's characterization of the word "plausible" from Judge Lifland's order as evidence of a specific finding that the language of the SPA is ambiguous takes the word out of context of the order as a whole.  In the order, Judge Lifland explained his conclusions concerning the dispute surrounding Section 10.3(a)(iv) of the SPA in a thorough, step-by-step manner, beginning with plaintiff's interpretation of Section 10.3(a)(iv).  Judge Lifland demonstrated that at initial glance, plaintiff's interpretation of Section 10.3(a)(iv) is "plausible," but such interpretation does not make sense when one reads Section 10 in its entirety.  Judge Lifland then demonstrated how defendants' interpretation of Section 10.3(a)(iv) is correct when one reads Section 10 as a whole.  In this context, the Court does not read Judge Lifland's use of the word "plausible," as an explicit finding that the language of the SPA is ambiguous. Therefore, the Court finds it committed no error in finding Judge Lifland's interpretation of Section 10.3(a)(iv), which is within the provisions of New York law, is binding on this Court under the doctrine of collateral estoppel.  Plaintiff's motion, insofar as it speaks to reconsideration, will be denied.

**B. Motion to alter or amend judgment**

In the alternative, plaintiff claims that this Court did not address, in its memorandum opinion and corresponding judgment whether plaintiff is obligated to defend or indemnify defendants for claims arising out of "active metal can plants sold under the SPA,"[1] and requests that the Court clarify this issue by amending its order and judgment to include the following language:

> [Plaintiff] is not obligated to defend or indemnify [defendants], or any other [defendants] affiliate, for any third party claims that arise from the food and beverage metal can business and the metal can technology of the Companies and Subsidiaries (as those terms are defined in the SPA) as they existed at the time of the SPA and which were sold pursuant to the SPA.[2]

Plaintiff seeks clarification on this issue given the 20 years of litigation between the parties over the meaning of the SPA, and

---

[1] As plaintiff raises no issues in its motion concerning "plants that were closed (inactive) at the time of the SPA," the Court finds plaintiff concedes that the Court has addressed its obligations surrounding "plants that were closed (inactive) at the time of the SPA." The Court construes the phrase "plants that were closed (inactive) at the time of the SPA" to mean "past businesses" as described in Section 10.3(a)(iv) of the SPA.

[2] Pursuant to this language, the Court finds that plaintiff's use of the phrase "active metal can plants sold under the SPA" means "the food and beverage metal can business and the metal can technology of the Companies and Subsidiaries (as those terms are defined in the SPA) as they existed at the time of the SPA and which were sold pursuant to the SPA."

-4-

indeed plaintiff did pray for clarification for their obligations pursuant to Section 10 of the SPA -- which includes this issue. The Court rejects plaintiff's assertion, however, that the Court did not address this issue in its previous memorandum opinion and corresponding judgment.

In its amended complaint, plaintiff prays to this Court for a judgment declaring the rights, duties and legal obligations of plaintiff and defendants with regard to plaintiff's obligations pursuant to the provisions of Section 10 of the SPA. In doing that, plaintiff prays that the Court's judgment declare that plaintiff is not obligated to defend or indemnify defendants or any defendant affiliate for any third party claims, which claims arise from the Business (as defined in the SPA). (Plaintiff's Amended Complaint, p. 2, Filing No. 8).  In asking for such relief, plaintiff directs the Court to quoted language of Section 10.3(a)(iv) of the SPA and illustrates that a dispute exists between the parties concerning such language.  The dispute encompasses plaintiff's obligation to defend and indemnify defendants from certain "third party claims" which the plaintiff defines as "various occupational exposure lawsuits."  Plaintiff further explains that among the "third party claims" are third party claims "relating to the Business," third party claims that do not "relate to the Business," and third party claims that, at the time of receipt by plaintiff, the parties did not know

whether the third party claim "related to the Business" or did not "relate to the Business." (Plaintiff's Amendment Complaint, p. 2, Filing No. 8).

As plaintiff's amended complaint identified and the parties demonstrated to this Court at the summary judgment level, the dispute over indemnity obligations of "third party claims relating or not relating to the Business" concerns Section 10.3(a)(iv) of the SPA. Section 10.3(a)(iv) provides:

> (a) Seller agrees to indemnify Buyer and its affiliates against and hold Buyer and its affiliates (including, after the Closing Date, the Companies and the Subsidiaries and their successors and assigns) harmless from all Liabilities arising out of . . .
>
> (iv) ***all Liabilities relating to past or existing businesses of the Companies and Subsidiaries other than the Business (other than Liabilities expressly assumed by Buyer pursuant to Section 5.9(b)), including, without limitation,***
>
> [1] the contingent liabilities referred to in Note 9 to the Companies' Balance Sheet and
>
> [2] all Liabilities with respect to any previous reorganization, restructuring, sales or dispositions of stock or assets of subsidiaries or assets of divisions or lines of business of the Companies or the Subsidiaries (or their predecessors) and the reorganization contemplated by Schedule 5.1, Section 5.11(b), and

> [3] all Liabilities created by any by-law, certificate of incorporation provision or agreement relating to the indemnification of any person who was an officer or director of any of the Companies or Subsidiaries prior to the Closing and who is an officer or direct of PKS or a subsidiary of PKS immediately following the Closing . . .

(emphasis, line breaks, and bracketed numbers added). The dispute surrounds the emphasized language of Section 10.3(a)(iv), and this dispute was previously clarified through Judge Lifland's interpretation of Section 10.3(a)(iv) in his arbitration order, which the Court found was binding on this Court. Judge Lifland came to this conclusion in his opinion:

> Accordingly, the Arbitrator concludes from the intrinsic evidence (the language of the SPA) that the correct reading of "other than the Business" as it appears in Section 10.3(a)(iv) is "other than [the food and beverage metal can business and the metal can and can end technology of the Companies and their subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA].
>
> **The correct construction is therefore that "existing businesses" is modified by "other than the Business" and "past businesses" is not.** In other words, Liabilities related to existing businesses not being sold (i.e., businesses "other than the Business") were retained by [plaintiff], a perfectly rational arrangement because it would make

-7-

> no sense for [defendants] to
> acquire responsibility for
> Liabilities when it did not acquire
> the business generating such
> Liabilities.

(Crown Exhibit 1.B., p. 5, Filing No. 39-9) (emphasis added).

Judge Lifland found that "existing businesses" is modified by the phrase "other than the Business," and "past businesses" is not. Thus, pursuant to Section 10.3(a)(iv) of the SPA, plaintiff must indemnify defendants for 100% of liabilities related to (1) businesses that were "past businesses" at the time of the SPA, and (2) businesses that were "existing businesses" at the time of the SPA. There is an exception, however, concerning "existing businesses." Plaintiff does not have to indemnify defendants for 100% of liabilities related to "the food and beverage metal can business and the metal can and can end technology of the Companies and their Subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA." Thus, if liabilities arise concerning a business that was an "existing business" at the time of the SPA and that business is part of "the food and beverage metal can business and the metal can and can end technology of the Companies and their Subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA," plaintiff does not have to indemnify defendants for 100% of the liabilities related to that business. Instead, as Judge Lifland explained, plaintiff only

-8-

has to indemnify defendants for 50% of such liabilities (*See* Crown Exhibit 1.B., p. 3-4 Filing No. 39-9).

Liabilities concerning the food and beverage metal can business and the metal can and can end technology of the Companies and their Subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA are subject to a separate indemnity provision provided in Section 10.3(a)(iii)[3] of the SPA, and this "Section provides for 50% indemnification, rather than 100% indemnification set forth in Section 10.3(a)(iv)." *Id.* The distinction between Section 10.3(a)(iii) and Section 10.3(a)(iv) and in effect, the indemnification amount for liabilities concerning what was sold pursuant to the SPA and what was not, is reflected in Schedule 3.16, which Section

---

[3] Section 10.3(a)(iii) provides:
> (a) Seller agrees to indemnify Buyer and its affiliates against and hold Buyer and its affiliates (including, after the Closing Date, the Companies and the Subsidiaries and their successors and assigns) harmless from all Liabilities arising out of . . .
>
> (iii) **50% of all Liabilities arising out of the matters described on Section 3.16** (but not with respect to any exacerbation of such matters occurring after the Closing date by reason of actions taken by Buyer or its affiliates) ("Environmental Liabilities") . . .

(emphasis and line break added).

10.3(a)(iii) references.  Judge Lifland identified the relevant portion of Schedule 3.16 to the parties:

> "Notwithstanding anything to the contrary contained in this Schedule 3.16, **Buyer shall be entitled to the indemnification provisions of Section 10.3(a)(iv) of the Stock Purchase Agreement, and Section 10.3(a)(iii) shall be inapplicable**, to the extent that any disclosure made in this Schedule 3.16 relates to past or existing business of the Companies and Subsidiaries other than the Business."

*Id.* at 4.  As Judge Lifland found, plaintiff must indemnify defendants for 50% of liabilities concerning the food and beverage metal can business and the metal can and can end technology of the Companies and their Subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA.

The Court concludes that Judge Lifland's binding interpretation of the dispute surrounding Section 10.3(a)(iv) of the SPA addresses whether plaintiff must indemnify defendants for claims arising out of the food and beverage metal can business and the metal can and can end technology of the Companies and their Subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA.

The Court will not adopt plaintiff's proposed additional language in this memorandum and corresponding order,

as it did not include similar language in its previous memorandum and order, because this language does not correctly represent the parties' obligations pursuant to Section 10 of the SPA. Plaintiff asks the Court to include this language:

> [Plaintiff] is not obligated to defend or indemnify [defendants], or any other [defendants] affiliate, for any third party claims that arise from the food and beverage metal can business and the metal can technology of the Companies and Subsidiaries (as those terms are defined in the SPA) as they existed at the time of the SPA and which were sold pursuant to the SPA.[4]

---

[4] In its amended complaint, plaintiff also prays for a judgment declaring that plaintiff is not required to defend or indemnify defendants for any third party claims until defendants can establish that said third party claims did not arise from the Business (as defined in the SPA) and is entitled to collect any monies plaintiff spent on any claims that plaintiff either mistakenly defended or was not obligated to defend.  Although, plaintiff did not ask the Court to amend its previous memorandum opinion and corresponding judgment with this language, the Court wants the parties to be aware of the reasons the Court declines to include such language.

The Court has made the parties aware of their legal obligations pursuant to Section 10 of the SPA.  If a specific case arises or has arisen and the parties are engaged in a factual dispute as to whether plaintiff must indemnify defendants for that case pursuant to Section 10 of the SPA, they are instructed to refer to Judge Lifland's interpretation and the Court's memorandum opinions and corresponding orders to settle their disagreement.  The Court is not going to create a procedure the parties must follow concerning all of the parties' indemnification claims without knowing the specific facts of such claims.  Furthermore, specific procedures for indemnification claims are set out in Section 10.4 of the SPA.  That being said, the Court is not going to award plaintiff "all monies" plaintiff believes it is entitled to concerning this matter, as the

The suggested language is inconsistent with Judge Lifland's interpretation because the language frees plaintiff of obligations that are provided for in the provisions of Section 10 of the SPA. As Judge Lifland demonstrated, the indemnification language provided in Section 10.3(a)(iv) is subject to the other language of the SPA creating exceptions to the parties' indemnification obligations defined in Section 10.3(a)(iv).[5] Specifically, Section 10.3(a)(iii) adds that plaintiff must indemnify defendants for 50% of all liabilities that arise from the food and beverage metal can business and the metal can technology of the Companies and Subsidiaries (as those terms are defined in the SPA) as they existed at the time of the SPA and which were sold pursuant to the SPA.

  Plaintiff's suggested language is also confusing because it uses the phrase "any third party claims" rather than the word "all liabilities." Pursuant to plaintiff's amended complaint, plaintiff's definition of "third party claims" is "various occupational exposure lawsuits," which includes various

---

specific facts of such instances allegedly entitling plaintiff to a momentary award have not been put before the Court.

[5] Indeed, the Court is aware of other language within the SPA that speaks to the plaintiff's indemnification obligations, such as the "De Minimis" exception provided for in Section 10.3(b). The Court's clarification on the issue presented in this case is in not intended to undermine other relevant provisions of the SPA (which to the Court's knowledge, are not in dispute).

occupational exposure lawsuits relating to the Business, various occupational exposure lawsuits that do not relate to the Business, and various occupational exposure lawsuits that, at the time of receipt by plaintiff, the parties did not know whether the third party claim related to the Business or did not relate to the Business.  To complicate matters more, "the Business" as defined in Judge Lifland's order is "the food and beverage metal can business and the metal can and can end technology of the Companies and their subsidiaries as they existed at the time of the SPA and which were sold pursuant to the SPA."  (Plaintiff's Amendment Complaint, para. 6, Filing No. 8; Crown Exhibit 1.B., p. 6 Filing No. 39-9).  The Court believes that including such term (or any of the other language plaintiff proposed in its amended complaint) in its order would (1) create confusion between the parties due to its lengthy definition; and (2) would be misleading to third parties unaware at first glance that the term "third party claims" has a special definition created by the plaintiff in this lawsuit.

     A separate order will be entered in accordance with this memorandum opinion.

     DATED this 2nd day of May, 2011.

                        BY THE COURT:

                        /s/ Lyle E. Strom
                        _____
                        LYLE E. STROM, Senior Judge
                        United States District Court